IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-00356-RN

| | |
|---|---|
| **James Hicks Pittman, Jr.,**<br><br>              Plaintiff,<br><br>v.<br><br>**Nancy A. Berryhill**, Acting<br>Commissioner of Social Security,[1]<br><br>              Defendant. | **Memorandum & Order** |

Plaintiff James Hicks Pittman, Jr., instituted this action on October 20, 2016, to challenge the denial of his application for social security income. Pittman claims that Administrative Law Judge ("ALJ") Carl B. Watson erred in (1) evaluating the medical opinion evidence, (2) failing to properly explain his rationale at each step of the sequential analysis, and (3) considering Pittman's diabetes. Both Pittman and Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 20, 32.

After reviewing the parties' arguments, the court has determined that ALJ Watson reached the appropriate decision. Substantial evidence supports his evaluation of the medical opinion evidence and his consideration of Pittman's impairments, including his diabetes. The court also finds that ALJ Watson properly set forth his reasoning at each step of the sequential analysis.

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

Therefore, the court denies Pittman's motion, grants Berryhill's motion, and affirms the Commissioner's decision.[2]

## I.    Background

On October 10, 2012, Pittman protectively filed an application for disability benefits alleging a disability that began on July 15, 2010.[3] After his claim was denied at the initial level and upon reconsideration, Pittman appeared before ALJ Watson via video conference for a hearing to determine whether he was entitled to benefits. ALJ Watson determined Pittman was not entitled to benefits because he was not disabled. Tr. at 14–23.

ALJ Watson found that Pittman had the following severe impairments: diabetes with neuropathy, alcoholic liver disease, and pancreatic insufficiency. *Id.* at 16. ALJ Watson found that Pittman's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.* at 18. ALJ Watson then determined that Pittman had the RFC to perform a range of light work with additional limitations. *Id.* He cannot climb ladders, ropes, or scaffolds but he can occasionally climb ramps and stairs. *Id.* He must also avoid working around unprotected heights or hazardous machinery. *Id.* ALJ Watson concluded that Pittman was capable of performing his past relevant work as chemist. *Id.* at 22. Thus, ALJ Watson found that Pittman was not disabled. *Id.*

After unsuccessfully seeking review by the Appeals Council, Pittman commenced this action on October 20, 2016. D.E. 1.

## II.    Analysis

### A.    Standard for Review of the Acting Commissioner's Final Decision

---

[2] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). 28 U.S.C. § 636(b). D.E. 16.
[3] Pittman subsequently amended his alleged onset date to March 29, 2012. Tr. at 14.

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

**B.      Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is cited in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The

burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Pittman is a diabetic who has been insulin-dependent for approximately 20 years. Tr. at 44. Katy Robinette, PA-C, of Wilmington Gastroenterology saw Pittman in March 2012 for abdominal cramping and alcoholic hepatitis. *Id.* at 321. She noted mild hepatic encephalopathy with asterixis and mild jaundice, and she suspected pancreatic dysfunction. *Id.* at 322. Robinette advised Pittman to abstain from alcohol. *Id.* Testing the following month showed mild portal gastropathy, mild antritis, and internal hemorrhoids. *Id.* at 299. He returned to Wilmington Gastroenterology the following month for abdominal pain, diarrhea, and alcoholic liver disease. *Id.* at 317. Pittman reported that he had stopped drinking and that he walked for 40 minutes, four times per week. *Id.* at 318. An examination noted normal findings aside from mild jaundice and a slightly enlarged liver. *Id.* at 318–19.

Dr. Peter Morris performed a consultative examination on March 30, 2013. *Id.* at 360–64. The examination yielded generally normal findings except for a slightly slow and antalgic gait, decreased sensation in the feet, and slight difficulties with the heel, toe, and tandem walking. *Id.* at 362–63. Dr. Morris's diagnoses included diabetes mellitus with diabetic neuropathy in both feet, abdominal complaints possibly related to alcoholic liver disease and pancreatic dysfunction, and a history of alcohol abuse. *Id.* He opined that Pittman could perform the exertional requirements associated with light work but that he should not work around heights. *Id.* at 363.

The next month, Dr. Gregory Johnson performed a consultative vision examination. *Id.* at 367–68. He noted Pittman had corrected vision of 20/40 in the right eye and 20/30 in the left eye.

*Id.* Dr. Johnson's assessment was very mild nonproliferative diabetic retinopathy in the left eye and mild cataracts in both eyes. *Id.*

Later that month, Dr. Hari Kuncha, a state agency reviewer, opined that Pittman could perform light work with postural limitations to frequently climbing and balancing and an environmental limitation to avoid concentrated exposure to hazards. *Id.* at 67–68. Dr. Kuncha also noted that Pittman's visual impairments did not result in any significant visual limitations. *Id.* In May 2013, Dr. Robert Whittier reviewed Pittman's records and opined that he was capable of performing light work. *Id.* at 91–92. Like Dr. Kuncha, he found that Pittman would be limited to frequent climbing and frequent balancing and should avoid concentrated exposure to hazards. *Id.* He also concluded that Pittman's eye conditions did not result in any significant visual restrictions. *Id.*

Pittman saw his treating physician, Dr. Scott Visser, for follow-up care for his diabetes in October 2013. *Id.* at 403–04. His examination recorded mostly normal findings aside from diminished sensation in the lower right extremity. *Id.* Dr. Visser made similar findings after examinations in January and April 2014 *Id.* at 397–98, 400–01.

Two months later, Danielle Wright, Pharm.D., saw Pittman for follow-up diabetic care. *Id.* at 371–75. Pittman reported that he walked 30–60 minutes per day, four or five times every week. *Id.* at 372. He reported compliance with medication and only one hypoglycemic episode in the previous month. *Id.* at 371–72.

Two months later, Pittman consulted with a dietician for his diabetes. *Id.* at 380. He stated that he did not care about the goal for his fasting blood sugar. *Id.* at 381. He reported that he experienced hypoglycemic episodes every one to two weeks but that they occurred less frequently

than they had six months earlier. *Id.* at 382. The dietician opined that Pittman lacked understanding of his insulin regimen. *Id.*

In July 2014, Pittman saw Rachel Thomas, Pharm.D., for management of his diabetes. *Id.* at 385. She remarked that he lacked motivation to manage his condition. *Id.* Specifically, she noted that he adjusted his insulin doses on his own and administered Humalog after meals, despite being advised to administer it before meals. *Id.* He reported that he decreased his walking due to foot pain but that he rode a stationary bike for 20 minutes, four times per week. *Id.* at 386.

Pittman returned later that month for foot pain and hypertension. Dr. Visser noted a generally normal examination except for monofilament testing in the lower extremities. *Id.* at 393. He observed that Pittman's glucose was fairly well- controlled and he diagnosed plantar fasciitis as the cause of his foot pain. *Id.* at 393–94.

Two months later, Dr. Visser issued a statement in which he concluded that Pittman could not lift ten pounds or occasionally lift and carry articles like small tools, he could not walk or stand for up to one third of an eight-hour work day, and he could not sit for about six hours in an eight-hour workday. *Id.* at 424. Dr. Visser listed Pittman's diagnoses of diabetes, neuropathy, and pancreatic insufficiency as the basis for the limitations he assessed. *Id.*

When Pittman returned to Dr. Visser in January 2015 for an examination, Dr. Visser noted normal findings except for monofilament testing and absent light touch sensation in a "stocking" pattern in both legs. *Id.* at 437–38. Three months later, Tyler Whiteside, D.P.T., performed a Functional Capacity Evaluation ("FCE"). *Id.* at 442–46. Whiteside noted that Pittman was unable to perform the demand minimal functional capacity for standing, walking, balancing, or kneeling. *Id.* at 446. He also noted that Pittman could not perform the demand minimal functional capacity for stair climbing for five minutes, squatting for five minutes, or stooping for five minutes at a 75-

degree flexation. *Id.* These results were endorsed by Dr. Visser as indicative of Pittman's condition since March 2012. *Id.* at 440.

### D. Additional Evidence

To support his claims, Pittman submitted additional evidence to the Appeals Council that was not before ALJ Watson. The Commissioner argues, and the court concludes, that the submitted evidence does not merit remand under sentence six.

The Appeals Council must consider evidence submitted by a claimant with a request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins* v. *Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991), *superseded on other grounds by* 20 C.F.R. § 404.1527; 20 C.F.R. § 404.976(b)(1) (effective to Feb. 4, 2016) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative, and it is material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. The Appeals Council need not review or consider new evidence that relates only to a time period after the ALJ issues the decision. *See* 20 C.F.R. § 404.976(b)(1).

The Appeals Council need not explain its reason for denying review of an ALJ's decision. *Meyer* v. *Astrue*, 662 F. 3d 700, 702 (4th Cir. 2011). It "must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Wilkins*, 953 F.2d at 95. When the Appeals Council incorporates additional evidence into the record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports

the Secretary's findings." *Gentry* v. *Colvin*, No. 2:13-CV-66-FL, 2015 WL 1456131, at *3 (E.D.N.C. Mar. 30, 2015) (quoting *Wilkins*, 953 F.2d at 96).

Here, Pittman submitted several pieces of evidence,[4] including Whiteside's FCE and Dr. Visser's endorsement of those findings (D.E. 22), Dr. Visser's office treatment notes from May 19, 2015, through August 7, 2015 (D.E. 23), records from Southeast Nephrology Associates from September 1, 2015, through May 23, 2016 (D.E. 24), and Pittman's blood sugar logs from July, August, and October 2014 with a list of his prescriptions on August 19, 2014 (D.E. 25).

The Appeals Council considered the additional evidence but denied review. Tr. at 2, 5. In doing so, the Appeals Council concluded that the additional evidence did not provide a basis to change ALJ Watson's decision. *Id.* at 2. The Appeals Council also stated that several of the submissions concerned a period outside of the time frame at issue before ALJ Watson. *Id.* The Appeals Council advised Pittman that he should file a new application to assess whether he was disabled after ALJ Watson's February 12, 2015 decision. *Id.*

Whiteside's FCE and Dr. Visser's endorsement of its results qualifies as "new" because they were not in the record before ALJ Watson, having been generated approximately three months after his decision. As to whether it relates to the relevant time period, Dr. Visser indicated in response to a letter from counsel that Whiteside's FCE findings represent the severity of Pittman's disease and his clinical presentation since March 2012. *Id.*

However, this submission cannot be considered "material" because there is not a reasonable probability that it would have changed the outcome of the case. The findings in the submission are contradicted by other substantial evidence in the record. ALJ Watson gave little weight to Dr. Visser's assessment that Pittman was incapable of even sedentary work. Tr. at 20–

---

[4] Several of Pittman's additional pieces of evidence were previously submitted to the Appeals Council and incorporated into the record. *See* D.E. 15E–19E, 15F–18F.

21. ALJ Watson noted that this was inconsistent with Dr. Morris's findings, which were afforded substantial weight, and Dr. Visser's own treatment notes, which observed that Pittman's diabetes symptoms were moderate, his condition was improving, and his blood sugar was well-controlled. *Id.* at 21. Here, the extreme limitations found in Whiteside's FCE are similarly contradicted by Dr. Morris's assessment as well as Dr. Visser's treatment notes. The state agency physicians, who both found Pittman could perform work at the light exertional level with minimal restrictions evaluations, similarly cast doubt on the accuracy of the FCE. Given ALJ Watson's consideration of Dr. Visser's earlier assessment, the court cannot reasonably conclude that there is a reasonable probability that acceptance of the FCE findings would change the outcome of the disability determination. Accordingly, as the Appeals Council determined, this evidence does not qualify as material.

With respect to Dr. Visser's 2015 office treatment notes and the additional records from Southeast Nephrology Associates, although they may qualify as "new" because they were not previously considered by ALJ Watson, these records clearly fall outside of the relevant period at issue in the disability determination. As the Appeals Council noted, for these records to be considered, Pittman's remedy is to file a new application. Additionally, several of Pittman's blood sugar logs were part of the record before ALJ Watson and, consequently, they are not "new" but duplicative of previously considered evidence. *See* Ex. 12F, 14F. Moreover, Pittman has failed to allege good cause for why any previously omitted logs were not made part of the record earlier as these documents existed prior to the dates of both the hearing and ALJ Watson's decision. This counsels against a finding that such evidence forms a basis for remand.

Pittman has also submitted copies of SSR 14–2, relating to the evaluation of Diabetes Mellitus (D.E. 26), and a recent Fourth Circuit opinion, *Patterson* v. *Comm'r of Soc. Sec. Admin.*,

No. 15–2487 (4th Cir. Jan. 19, 2017) (D.E. 29). The court is aware of these materials and their instructions and has been guided by them to the extent they are applicable to this case.

Additionally, Pittman has provided several copies of learned guidance for the court's review, including articles titled "What Causes Your Vision to Fluctuate" by North Carolina Eye Associates (D.E. 27), "The Strange Link Between Blood Sugar and Vision Loss" by Primal Source News (D.E. 28), and "Eye Changes When You Come Down With Diabetes" from the website www.diabetes.net (D.E. 30). However, a medical source has not confirmed that this general health information is related to Pittman's condition, and therefore it cannot be deemed material. These articles speak generally of possible effects of blood sugar levels on vision but do not address Pittman's eye condition, his limitations, or his ability to engage in work activities. Consequently, the court cannot consider them as evidence in this case nor conclude that they provide a basis for remand.

As the additional material submitted fails to provide a basis for remand, Pittman's argument on this issue lacks merit.

### E.     Medical Opinion Evidence

Pittman next contends that ALJ Watson erred in considering the medical opinion evidence. He points to Whiteside's FCE which, he submits, finds support in the assessments of Drs. Visser and Kuncha. He also argues that ALJ Watson erred in failing to weigh the opinions of Drs. Kuncha and Whittier. The Commissioner maintains that ALJ Watson properly weighed this evidence. The undersigned concludes that Pittman has failed to establish reversible error in ALJ Watson's evaluation of the medical opinion evidence.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson* v. *Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig* v. *Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *Ward* v. *Chafer*, 924 F. Supp. 53, 55–56 (W.D. Va. 1996); SSR 96–2p, 1996 WL 374188 (July 2, 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore* v. *Colvin*, No. 0:11–2865-TMC,

2013 WL 837643, at *2 (D.S.C. Mar. 6, 2013) ("In doing so [i.e., giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level, or so-called "other sources." SSR 06–03p, 2006 WL 2329939, at *2, 4 (Aug. 9, 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (identifying "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of "other sources" and the reasons for the weight given. SSR 06–03p, 2006 WL 2329939, at *6; *Napier* v. *Astrue*, No. TJS-12–1096, 2013 WL 1856469, at *2 (D. Md. May 1, 2013). The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. SSR 06–03p, 2006 WL 2329939, at *5.

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but non-treating sources, and non-examining sources. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey* v. *Colvin*, No. 4:14-cv-00004, 2015 WL 1810173, at *3 (W.D. Va. Mar. 12, 2015), *adopted*, 2015 WL 1810173, at *1 (Apr. 21, 2015); *Napier*, 2013 WL 1856469, at *2. More weight is generally given to the opinions of a treating source than to the opinions of a non-treating examining source and to the opinions of an examining source than to the opinions of a non-examining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a non-treating

examining source or a non-examining source may be given more weight than those of a treating source. *See, e.g., Mastro* v. *Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a non-treating examining physician than to those of a treating physician); SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374183, at *2, 5 (July 2, 1996). But these opinions must still be evaluated and accorded appropriate weight. SSR 96–5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

As noted above, Whiteside's FCE found that Pittman could not perform the minimal demands to evaluate his capacities to stand, walk, kneel, balance, climb stairs, squat, or stoop. Tr. at 442–46. Whiteside also noted that Pittman swayed while standing and shuffled when he walked. *Id.* He concluded that Pittman could not perform sedentary work. *Id.* Dr. Visser endorsed these findings. *Id.* at 440.

Whiteside is a doctor of physical therapy ("DPT"). A physical therapist is considered an "other source" under the Regulations. *See Hatton* v. *Comm'r of Soc. Sec. Admin.*, 131 F. App'x. 877, 878 (3d Cir. 2005) ("Statements from a physical therapist are entitled to consideration as

additional evidence, but are not entitled to controlling weight.") (citing 20 C.F.R. § 404.1513(d));

*Komar* v. *Apfel*, 134 F.3d 382, 1998 WL 30267, at *2 (10th Cir. Jan. 9, 1998) ("[A] physical

therapist's opinion can be considered, but the opinion is entitled to less weight than that accorded

to the opinions of acceptable medical sources.") (citing *Craig*, 76 F.3d at 590). Although his

credentials indicate that he holds a DPT degree, this does not indicate that he is a medical doctor

or another acceptable medical source. *See, e.g., Michel* v. *Colvin*, 640 F. App'x 585, 599 n.7 (8th

Cir. Mar. 23, 2016) (doctor of physical therapy not an acceptable medical source under 20 C.F.R.

§ 404.1513(d); *Sommers* v. *Colvin*, No. 5:14-cv-163-EMT, 2015 WL 4633516, at *7 n.10 (N.D.

Fla. Aug. 3, 2015) ("While [a physical therapist's] credentials indicate he holds a doctor of physical

therapy degree ..., they do not reflect that this therapist is a medical doctor or other acceptable

medical source."); *Adesina* v. *Astrue*, No. 12–cv–3184 WFK, 2014 WL 5380938, at *5 (E.D.N.Y.

Oct. 22, 2014) ("Plaintiff's treating source for her musculoskeletal impairments was not a medical

doctor, but a Doctor of Physical Therapy....").

Although Whiteside is not an acceptable medical source under the Regulations, as an "other

source," his findings may be relevant to the extent they address the severity and functional impact

of Pittman's impairments. As noted above, however, his FCE findings were inconsistent with other

evidence in the record. For example, Whiteside found that Pittman could not walk, stand, kneel,

or balance for a sufficient period to be evaluated. However, Dr. Morris opined that Pittman was

capable of the exertional requirements of light work, with a limitation to no more than frequent

climbing. The record also shows that Pittman was noted to walk without difficulty and without an

assistive device. Pittman himself reported that he walked for exercise during the relevant period.

Given the inconsistencies with other evidence which ALJ Watson credited, the undersigned cannot

conclude that a reasonable probability exists that Whiteside's post-decision FCE would alter ALJ Watson's determination.

Pittman also contends that ALJ Watson erred in failing to address the limitation in balancing assessed by Drs. Kuncha and Whittier. Both state agency physicians limited Pittman to no more than frequent balancing because of his foot neuropathy. The RFC does not restrict Pittman's balancing.

The Commissioner concedes that ALJ Watson failed to evaluate these physicians' assessments but maintains, correctly, that this error is harmless. ALJ Watson concluded Pittman was capable of performing his past relevant work as a chemist, a position which does not require balancing. *See* DOT 022.161–101. Thus, regardless of what weight ALJ Watson would have given to the state agency physicians' balancing limitation, or if he incorporated such a limitation into the RFC determination, it would have no impact on ALJ Watson's step four finding as it relates to Pittman's performance of his past work.

Because ALJ Watson concluded that Pittman had the ability to perform the demands of his past work as a chemist, which required no balancing, any error in the failure to give weight to the state agency physicians' opinions is harmless. Accordingly, Pittman's argument is rejected.

F.     **ALJ Watson's Rationale**

Pittman next asserts that ALJ Watson failed to find that his gastroparesis, brittle blood sugars, and hypertension were severe impairments at step two. He also contends that ALJ Watson failed to properly explain his step three analysis, precluding meaningful review. The Commissioner contends that a review of ALJ Watson's decision clearly sets forth his rationale. The court concludes that ALJ Watson's step two and step three findings were not improper and his reasoning was sufficiently explained.

### 1.    Additional Severe Impairments

Pittman contends that ALJ Watson erred in failing to discuss his gastroparesis, brittle blood sugars, and hypertension at step two. However, ALJ Watson noted Pittman's hypertension was controlled by medication. Tr. at 19. Pittman has not identified any symptoms associated with this condition that more than minimally impact his ability to perform work-related activities. Consequently, it is not a severe impairment. *Ely* v. *Colvin*, Case No. 1:12-cv-75, 2014 WL 2967913, at *12 (M.D.N.C. July 1, 2014) ("[C]ourts will affirm an ALJ's finding that a condition does not qualify as severe where (as here) the record shows medicinal relief."); *see also Martise* v. *Astrue*, 641 F.3d 909, 923–24 (8th Cir. 2011) (condition controllable and amenable to treatment not a severe impairment); *Harris* v. *Comm'r of Soc. Sec.*, No. 12–14121, 2014 WL 793612, at *9 (E.D. Mich. Feb. 27, 2014) (upholding step two finding of nonseverity where "the record shows the [plaintiff's] treatment was routine and her conditions were either controlled with medications or asymptomatic") (internal quotation marks omitted); *Barrow* v. *Astrue*, No. 2:10CV698, 2011 WL 4500846, at *5 (E.D. Cal. Sept. 27, 2011) (unpublished) ("[B]ecause the medical record confirms that [the] plaintiff's foot impairments responded to medication and treatment, the ALJ could properly find that they were not severe impairments."). Accordingly, his argument that ALJ Watson erred in failing to find his hypertension to be a severe impairment is unpersuasive.

Pittman has also failed to establish that his gastroparesis and hypertension were severe impairments. Contrary to Pittman's assertion, ALJ Watson also remarked that Pittman experienced gastric problems. Tr. at 19. However, Pittman has not identified a diagnosis of gastroparesis in the record. As the Commissioner points out, gastroparesis is a disorder resulting in the delay or cessation of the movement of food from the stomach to the small intestines. D.E. 32 at 11. Pittman, however, stated that he made frequent trips to the bathroom, which would appear to conflict with

the condition of gastroparesis. Nonetheless, it is not the role of the reviewing court to connect symptoms of his gastric issues with a diagnosis. Lacking evidence to support that he has a diagnosis of gastroparesis, the court cannot conclude that ALJ Watson erred in omitting it as a severe impairment at step two.

Finally, ALJ Watson fully considered and discussed Pittman's diabetes and found that it was a severe condition at step two. As is discussed in more detail below, the record is void of a separate diagnosis of "brittle" blood sugars and this condition does not qualify as a medically determinable impairment in the instant matter.

For these reasons, Pittman has not demonstrated error by ALJ Watson at step two.

### 2. Listings Analysis

Pittman also contends that ALJ Watson erred in evaluating his conditions under the Listings. He maintains that ALJ Watson should have discussed Listings 1.02 and 11.14 in more detail. The Commissioner maintains, and the court finds, that ALJ Watson committed no error in declining to discuss these Listings.

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a Listing if it satisfies all the specified medical criteria. *Sullivan* v. *Zebley*, 493 U.S. 521, 530 (1990); SSR 83–19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall* v. *Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

An ALJ is not required to explicitly identify and discuss every possible listing; however, he is compelled to provide a coherent basis for his step three determination, particularly where the

"medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. *Radford* v. *Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* (citing *Cook* v. *Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Meador* v. *Colvin*, No. 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing *Smith* v. *Astrue*, 457 F. App'x. 326, 328 (4th Cir. 2011)). However, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." *Id.* If the decision does not include sufficient explanation and analysis to allow meaningful judicial review of the ALJ's listing determination, remand is appropriate. *Radford*, 734 F.3d at 295.

Here, ALJ Watson stated that he "considered whether [Pittman's] diabetes with neuropathy meets or medically equals Listings 1.02, 2.00, 4.00, 9.00, 9.08, 11.14 or 12.00 but finds that the record does not document findings consistent with any such Listing of Impairments." Tr. at 18. As in *Radford*, the issue presented is not whether Pittman meets Listings 1.02 or 11.14 but whether there was sufficient evidence in the record to trigger the potential applicability of these Listings. If so, the court must also determine whether ALJ Watson's explanation and analysis, as a whole, is sufficient to allow judicial review of the step three determination as to those Listings.

### a. Listing 1.02

Pittman first contends the record contains sufficient evidence that his impairments could establish the criteria for Listing 1.02. This Listing provides:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.02.

Pittman does not allege the involvement of one major joint in each of his upper extremities so as to satisfy subparagraph B of Listing 1.02. While he does allege, and the record reflects, neuropathy involving his lower extremities, Pittman has not established an "inability to ambulate effectively," which requires "the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* at § 1.002B2b(1). Further, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.* at § 1.00B2b(2). The record does not disclose, nor does Pittman identify, evidence suggesting he uses a walker, wheelchair, or two canes or crutches to move about or that such devices were medically required. Moreover, Dr. Morris found that he could stand and walk up to six hours in an eight-hour workday and the record reflected both that Pittman walked without an assistive device and that he walked without difficulty. This constitutes substantial evidence supporting a finding that Pittman could ambulate effectively.

Thus, without addressing whether there is evidence demonstrating a major dysfunction of any of Pittman's joints with additional imaging findings, the record fails to contain evidence supporting a determination that his impairments meet the additional criteria of subparagraphs A or

B of Listing 1.02. Lacking sufficient findings potentially triggering this Listings' applicability, ALJ Watson committed no error in failing to discuss it at step three.

### b.     11.00 Listings

Section 11.00 of the Listings addresses neurological conditions in adults. Pittman argues that the record contains sufficient evidence that his impairments establish the criteria for Listing 11.14[5] (peripheral neuropathies), which requires "disorganization of motor function as described in 11.04B, in spite of prescribed treatment." 20 C.F.R. Pt. 404, Subpart P., App'x 1 § 11.14. Under Listing 11.04B, a claimant must show "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. Pt. 404, Subpart P., App'x 1 § 11.04B. In turn, the preamble to the 11.00 Listings provides:

> C. Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms.

20 C.F.R. Pt. 404, Subpart P., App'x 1 § 11.00C. Therefore, to establish a disability under Listing 11.14, Pittman must demonstrate: (1) disorganization in motor function; (2) in two extremities; (3) resulting in sustained disturbance of: (a) gross and dexterous movements; or (b) gait and station; and (4) the disorganized motor function is persistent or sustained, in spite of treatment.

There is no doubt that the record shows some sensory loss, imbalance, and fatigue. However, there is a lack of ample evidence showing significant or persistent disorganization of motor function. While one provider noted asterixis, that record did not involve two extremities and

---

[5] This Listing has since been amended.

predates the alleged onset date. Tr. at 323. Pittman has not identified subsequent, similar findings. Moreover, this entry in the record noted that Pittman had normal gait and station. *Id.* Given the lack of evidence of persistent disorganization of motor function and that such a finding was for a sustained period, it is difficult to see how Pittman would meet this Listing.

Lacking evidence in the record to establish the criteria for Listing 11.14, Pittman cannot demonstrate that ALJ Watson erred in failing to consider whether his impairments met or medically equaled this Listing. Consequently, the court rejects his argument on this issue.

### G.     Diabetes

Pittman's final argument is that ALJ Watson failed to consider his "brittle diabetes" and its effects on his functioning. He also argues that ALJ Watson improperly required Pittman to demonstrate end organ damage as a prerequisite to his diabetes qualifying as disabling under the Listings. The Commission maintains that ALJ Watson properly evaluated Pittman's diabetes. The court agrees that ALJ Watson did not err in considering this condition.

#### 1.     Brittle Diabetes

Pittman contends that ALJ Watson failed to consider his "brittle diabetes" and its attendant effects on his functioning. The Commissioner maintains that ALJ Watson properly considered Pittman's diabetes and its effects on his functioning, including his vision and balance, but a separate diagnosis of "brittle diabetes" lacks support in the record. The court finds the Commissioner's position persuasive.

Pittman has not identified a medical provider that has diagnosed him with "brittle diabetes" as a distinct diagnosis from his diabetes mellitus. Therefore, the attendant symptoms he associates with that diagnosis cannot be confirmed. Moreover, it is not the role of the reviewing court or the Commissioner to identify and diagnose a claimant's condition based on the presence or absence

21

of symptoms. That is the role of qualified medical professionals. Absent a diagnosis from such a source, the court cannot accept this as one of Pittman's diagnoses or credit the associated symptoms he identifies.

Additionally, ALJ Watson considered whether Pittman had limitations in standing and walking or with his vision. Although Pittman alleged difficulty with standing and walking, ALJ Watson found that his statements were not entirely credible, noting that Pittman failed to follow his prescribed course of treatment. Moreover, Pittman's statements were contradicted by Dr. Morris's assessment, in which he found that Pittman could stand and walk up to six hours in an eight-hour workday. Such findings were supported by other evidence in the record which showed that Pittman walked without an assistive device and that he walked without difficulty.

As to Pittman's vision, ALJ Watson's decision demonstrates why additional restrictions are not warranted. Pittman's claims of blurry vision were inconsistent with other evidence. Dr. Johnson noted Pittman had minimal diabetic eye disease and good corrected vision. The record demonstrates that Pittman denied changes in his vision. *Id.* at 21. Additionally, he was noncompliant with treatment. For instance, he told one provider he did not care about blood sugar goals, he adjusted his insulin on his own, and he administered another medication contrary to the manner directed.

Thus, the decision demonstrates that ALJ Watson fully considered limitations in the functional areas related to standing, walking, and vision and properly explained his reasons that additional restrictions in these areas were not justified.

### 2. End Organ Damage

Pittman argues that ALJ Watson erred by requiring evidence of end organ damage in order for his diabetes to qualify as disabling at step three. The Commissioner points out, and the court

agrees, that ALJ Watson did not hold that end stage organ damage was a prerequisite to Pittman's diabetes qualifying as a disabling impairment at step three.

ALJ Watson did not require Pittman to demonstrate end organ damage for his diabetes to be disabling under the Listings. Tr. at 18. Instead, ALJ Watson referenced that end organ damage had not occurred even though Pittman's diabetes was uncontrolled for a period of time. *Id.* at 19.

Moreover, substantial evidence supports ALJ Watson's conclusion that Pittman's diabetes did not meet the Listings. The record established that Pittman's diabetes symptoms were moderate and that treatment resulted in good symptom control. *Id.* at 19–21. Dr. Morris opined that Pittman was capable of the exertional demands associated with light work and Dr. Johnson found that Pittman had only minimal diabetic eye disease with good corrected vision. *Id.* at 21. ALJ Watson concluded that Pittman's statements of his functional limitations related to his diabetes were not fully credible because they were inconsistent with other evidence in the record. For example, although he alleged poor vision, this corrected when his blood sugar levels stabilized. *Id.* at 19–20. The evidence also showed that Pittman was not fully compliant with his treatment regimen including the appropriate administration of insulin to counteract hypoglycemic symptoms, including blurred vision. *Id.*

Lacking evidence, without requiring that it be end organ damage, that his diabetes impairs a body system with sufficient severity to meet the criteria of any of the Listings, the court must reject present Pittman's argument.

### III. Conclusion

For the forgoing reasons, the court denies Pittman's Motion for Judgment on the Pleadings (D.E. 20), grants Berryhill's Motion for Judgment on the Pleadings (D.E. 32), and affirms the Commissioner's determination. This action is dismissed. The Clerk shall close this case.

Dated:  December 18, 2017

_Robert T. Numbers II_
_____
Robert T. Numbers, II
United States Magistrate Judge